UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

    CHANA TAUB,

                              Debtor.

**MEMORANDUM & ORDER**

10 CV 5717 (RJD)
08 BK 44210 (ESS)

------------------------------------------------------------X
DEARIE, Chief Judge.

       Debtor Chana Taub ("Debtor") moves for an immediate stay of all proceedings and Orders in this Chapter 11 bankruptcy action and requests that this Court withdraw the reference of her entire case pursuant to 28 U.S.C. §§ 157(b)(5) and 157(d). Additionally, Debtor asks this Court to reverse the Bankruptcy Court's April 9, 2010, Order authorizing the appointment of a Chapter 11 trustee and restore Debtor as debtor-in-possession and manager of the bankruptcy estate (the "Estate"). The motion for a stay is denied and the April 9, 2010, Order of the Bankruptcy Court is once again affirmed.

## **Background**

       On July 1, 2008, in the midst of well publicized divorce proceedings and facing imminent foreclosures on a number of her real properties, Debtor filed a voluntary petition for Chapter 11 bankruptcy protection. Since that date, Debtor's apparently singular goal has been to delay the orderly and cost-efficient administration of the Estate. Under Debtor's watch, the Estate accrued hundreds of thousands of dollars worth of unpaid post-petition expenses, including mortgage installments, taxes and professional fees, with no hint of an effective reorganization on the horizon. In the process, the District and Bankruptcy Court dockets have become repositories of the seemingly intractable ill will existing between the Debtor and her husband, Simon Taub.

       By Order dated April 9, 2010, the Bankruptcy Court (the Honorable Elizabeth S. Stong) authorized the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(2) and 11

U.S.C. § 1104(a)(3) (the "Trustee Order"); several days later, the Court approved the appointment of Lori Lapin Jones, Esq. (the "Trustee") to manage the Estate.[1] On June 14, 2010, the Bankruptcy Court denied Debtor's request for a stay pending appeal of the Trustee Order.[2] On August 30, 2010, in an opinion which details the pertinent history of Debtor's case, the District Court (the Honorable Carol B. Amon) affirmed the Bankruptcy Court's decision to order the Trustee's appointment under 11 U.S.C. § 1104(a)(2), as being "in the interests of creditors . . . and other interests of the estate." (Mem. & Order, 10 CV 2600 (CBA), Dkt. #32 ("Amon Mem.").)

Unhappy with these results, on September 28, 2010, Debtor filed a civil RICO lawsuit against Judge Stong, Judge Amon, the Trustee, Eastern District Chief Bankruptcy Judge Carla Craig, the New York Police Department, Kings County District Attorney Charles Hynes and judges and attorneys affiliated with prior divorce and criminal proceedings involving the Taubs. The lawsuit alleged that Mr. Taub, through some combination of bribery and intimidation, conducted the defendants as a RICO enterprise with the goal of impoverishing Debtor. On February 7, 2011, after Debtor had requested multiple extensions to the deadline for filing objections to the Magistrate's Report and Recommendation, the District Court (the Honorable Jed S. Rakoff) dismissed the action sua sponte.

---

[1] On May 28, 2010, pursuant to 11 U.S.C. § 1112(b), the Trustee requested that Debtor's Chapter 11 case be dismissed or converted into a Chapter 7 liquidation. On June 5, 2010, the United States Trustee filed a similar motion requesting a Chapter 7 conversion. After hearing oral argument on September 27, 2010, the Bankruptcy Court has deferred ruling on these motions at the Trustee's request while Debtor's matrimonial action proceeds in state court. Debtor devotes a large portion of her current filings, where not deriding Judge Stong and the Trustee, to repeating her opposition to these motions.

[2] The very next day, Debtor filed a motion seeking the Trustee's termination, a request that the Bankruptcy Court denied on July 1, 2010. Debtor has filed four subsequent motions to terminate the Trustee, two of which were withdrawn, the third of which was denied and the fourth of which is pending. See In re Taub, 441 B.R. 211, 213-15 (Bankr. E.D.N.Y. 2010).

Debtor has illustrated her displeasure with the bankruptcy proceedings in other ways. Between February and August 2010, Debtor appealed nearly every order issued by the Bankruptcy Court for a total of eleven appeals in what the parties agree should be a relatively simple Chapter 11 case. The Court dismisses six of the pending appeals by separate order of today's date; four of the appeals are discussed in some detail below.[3] Additionally, by action commenced December 9, 2010, Debtor requests that this Court enjoin all proceedings in the Bankruptcy Court, vacate the Trustee Order and withdraw the reference of her entire Chapter 11 case pursuant to 28 U.S.C. §§ 157(b)(5) and 157(d). Debtor also requests a jury trial "for claims of serious criminal contempt as well as claims for injunctive relief, which are coupled with claims for compensatory, and/or punitive damages" against the Trustee. (Motion to Withdraw the Reference ("Mot."), Dkt. #1, ¶ 122.)

## The April 9, 2010 Trustee Order

The scattershot allegations in Debtor's recently filed 73-page brief are all variations on the theme "that due to the Chapter 11 Trustee's continuing, daily agenda to squander, loot and diminish the Debtor's estate," the Court must immediately remove the Trustee and restore Debtor as the Estate's manager and debtor-in-possession. (Id. ¶ 4.) The Court construes this as a request for reconsideration of Judge Amon's August 2010 Memorandum and Order denying such relief. Indeed, proceeding as if that decision does not exist, Debtor submits a lengthy chart containing a line-by-line analysis of the "blatant untruths and miscalculations" in Judge Stong's Trustee Order. (Mot. at 25-42.) Debtor's primary contention remains that she "never had the

---

[3] In addition, professed party in interest Soya Radin, Debtor's close acquaintance and tenant in one of the Estate properties, appeals from the Bankruptcy Court's July 1, 2010, Order denying her motion to vacate the Trustee Order. See 10 CV 3866 (RJD). For the reasons given in (i) the Bankruptcy Court's July, 1, 2010, Order denying Ms. Radin's motion; (ii) Judge Amon's August 31, 2010, Memorandum and Order; and (iii) this Court's denial of Debtor's renewed motion to terminate the Trustee's appointment, and because further briefing on the issue by Ms. Radin would add nothing beyond expense and delay, the Court dismisses her appeal as well.

3

opportunity to administer her estate and reorganize free from Simon Taub's criminal interference, and with the benefit of her equitable distribution claims." (Id. ¶ 44.) Judge Amon addressed this argument at length. (See Amon Mem. at 12-16.) Debtor's own actions, moreover, belie her professed reorganizational plan. After Mr. Taub had moved successfully to lift the automatic stay so that the equitable distribution action could proceed in matrimonial court, on August 30, 2010 – the morning on which the action was set to commence – Debtor and two others forced Mr. Taub into bankruptcy by filing a specious involuntary petition which temporarily froze the equitable distribution action in its tracks.[4]

The deadline for filing a motion for reconsideration with Judge Amon, as prescribed by Federal Rule of Civil Procedure 59(e), was September 28, 2010. Rather than research suitable grounds, if any, for reconsideration, Debtor used this period to fabricate a civil RICO claim against Judge Amon, who then recused herself from this action. Succinctly stated, this Court knows of no authority allowing a party who is unhappy with a District Judge's decision to effectuate that Judge's recusal then present the exact same and already rejected arguments to a brand new District Judge. Such a tactic, however, is a familiar one to Debtor, who has sought recusal of the four judges assigned to her matrimonial action with the goal of "'obtain[ing] yet another forum and another Judge who will be unfamiliar with the history of [her] case in the hopes of obtaining results previously denied.'" In re Taub, 413 B.R. 69, 72 n.1 (Bankr. E.D.N.Y. 2009) (quoting State Supreme Court Justice Carolyn E. Demarest, whom Debtor has previously targeted for recusal).[5]

---

[4] The Bankruptcy Court (the Honorable Carla E. Craig) dismissed the involuntary petition on September 7, 2010.

[5] Debtor sued Justice Demarest in this Court for alleged civil rights violations committed in the course of presiding over Debtor's matrimonial action. See Taub v. Demarest, 2010 WL 680979 (E.D.N.Y. 2010) (Irizarry, J.) (dismissing the action as frivolous).

4

Like the state matrimonial courts, the federal courts are not a smorgasbord that exists for Debtor's pleasure and tactical convenience. Thus, Debtor's untimely motion for reconsideration is denied. To the extent that Debtor cites independent examples of the Trustee's "recent egregious conduct," (Mot. ¶¶ 92-95), including the Trustee's seeking examination and subpoenaing the bank records of Debtor and a close friend and purported creditor,[6] such perfectly reasonable acts of Estate administration do not approach the type of changed circumstances warranting termination under 11 U.S.C. § 1105. See In re Taub, 441 B.R. at 215-16 (summarizing authority). To the contrary, as the Bankruptcy Court recently noted, the Trustee's "monthly reports show[] improved operating results," and "the volume of motion practice and other court proceedings has declined under the Trustee's stewardship." Id. at 216-17. Contrasting these improvements with the preceding state of affairs, this Court's removing the Trustee and restoring Debtor as debtor-in-possession of the Estate at this juncture would represent an act of recklessness toward the Estate's creditors.

Because Debtor advances no justification for the Trustee's termination, she is not entitled to an emergency stay, which requires the moving party to illustrate "'a substantial possibility . . . of success' on the merits." In re Bijan-Sara Corp., 203 B.R. 358, 360 (2d Cir. BAP 1996) (quoting Hirschfeld v. Bd. of Elec., 984 F.2d 35, 39 (2d Cir.1992)). Nor will the Court conduct a jury trial on whether to enjoin the bankruptcy proceedings, as injunctions have long been classified equitable relief for which a jury is unavailable. See, e.g., United States v. Louisiana, 339 U.S. 699, 706 (1950). Debtor's labeling the relief sought as being "in the nature of criminal contempt" provides no basis for overriding this settled principle. (Mot. ¶ 130.)

---

[6] In Bankruptcy Court filings, the Trustee, upon information and belief, asserts that Debtor may be spending or secreting assets which belong to the Estate.

## Relief against Trustee

In addition to the Trustee's removal, or in the alternative, Debtor requests a jury trial to pursue sanctions, in the form of compensatory and punitive damages, for the Trustee's "attempting to improperly liquidate a valuable estate." (Mot. ¶ 112.)

This is "at least the fourth court in which the Appellant has sought some form of the same relief without success." In re Bijan-Sara Corp., 203 B.R. at 360. Debtor has moved three times, all pro se, for similar relief from the Bankruptcy Court.[7] The first motion, filed on August 5, 2010, while Debtor was still represented by counsel, was withdrawn on August 17, 2010.[8] The second motion, filed that same day, was withdrawn shortly after the Bankruptcy Court heard oral argument on August 24, 2010. The third motion was filed on September 7, 2010. By Order dated December 1, 2010, the Bankruptcy Court denied the motion on the grounds that Debtor "'ha[d] not shown that the Trustee has failed to satisfy her fiduciary duties to the estate, failed to exercise her business judgment in managing the estate's affairs, or engaged in gross mismanagement or waste.'" (Mot. ¶ 105.) Debtor argues that this Order was "not based on facts," but rather was due to the Bankruptcy Court's "following Simon Taub's agenda to destroy Debtor and her estate." (Id.) This bare allegation, resembling those in Debtor's recently dismissed civil RICO lawsuit naming Judge Stong as a defendant, is quickly rejected. To the extent that Debtor requests a trial on the issue of sanctions, the Court construes this request as an appeal of the Bankruptcy Court's December 1, 2010, Order, which the Court denies.

---

[7] A review of the docket shows that Debtor is at it again; by submission dated February 16, 2011, Debtor once more requests that the Bankruptcy Court remove and sanction the Trustee.

[8] During the pendency of that motion, by Order dated August 13, 2010, Debtor's attorney (David Carlebach, Esq.) was permitted to withdraw as counsel. As new counsel (David Bellon, Esq.) has now appeared on Debtor's behalf in both the Bankruptcy and District Courts, this Court grants Mr. Carlebach's motion to withdraw as counsel from appeals 10 CV 2492 (RJD) and 10 CV 2599 (RJD).

## Withdrawal of the reference

Apart from relief involving the Trustee, Debtor seeks "entry of an order withdrawing the reference of the entire bankruptcy case" under either 28 U.S.C. § 157(b)(5) or 28 U.S.C. § 157(d). (Mot. at 1.) Under either statutory provision, such relief is inappropriate and would result in "an inefficient allocation of judicial resources." In re Orion Pictures Corp., 4 F.3d 1095, 1099 (2d Cir. 1993). Thus, Debtor's request is denied.

### 28 U.S.C. § 157(d)

Debtor argues that withdrawal is required under 28 U.S.C. § 157(d), which authorizes the withdrawal of any proceeding whose resolution "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." This futile argument is based on Debtor's assertion that her husband "Simon Taub violated both provisions of the bankruptcy code and 18 U.S.C.1962(d)" by "collu[ding] with others in the administration of the bankruptcy estate." (Mot. ¶ 117.) As Debtor contends, "the primary objective of Simon Taub's racketeering enterprise," which includes, among others, Judge Stong and Judge Amon, "has been to inflict continued and severe economic, emotional and physical hardship upon the Debtor, with the desire of disgorging the Debtor of her Constitutional and property rights." (Id. ¶¶ 11-13.) When Debtor first raised this claim in her Southern District civil filing, she appeared pro se. The present motion – although bearing certain indelible hallmarks of prior filings – regrettably is undersigned by counsel, Debtor's ninth since the inception of her bankruptcy case. The Court strongly advises counsel to review Federal Rule of Civil Procedure 11.

In all other cases, "[w]ithdrawal under § 157(d) requires a showing of cause, a term which § 157(d) does not define." In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996). "A

7

district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." In re Orion, 4 F.3d at 1101. Debtor concedes that "[t]his is a core proceeding, as it relates to matters concerning the administration of the bankruptcy estate." (Mot. ¶ 119.) Indeed, the "proceeding" which Debtor seeks to have withdrawn is the entire Chapter 11 case. Debtor argues that the District Court is the exclusive forum for her claims, moreover, as "the Bankruptcy Court cannot redress Debtor's claims because Debtor seeks sanctions in the nature of criminal contempt." (Id. ¶ 130.) The Court rejects such a blatant exercise in forum shopping and adheres to the Second Circuit's admonition against "hearing core matters in a district court." In re Orion, 4 F.3d at 1099. Accordingly, no "cause" exists to withdraw the reference under § 157(d).

## 28 U.S.C. § 157(b)(5)

Debtor alternatively cites to the venue provision in 28 U.S.C. § 157(b)(5), which states that a "district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending." Debtor asserts that this provision requires withdrawing the reference because her claim is one for "personal injury." (Mot ¶ 3.) Specifically, Debtor argues that since the Bankruptcy Court and Trustee wish "to force the sale of the Debtor's real property, the Debtor is in imminent danger of suffering irreparable loss and damage thereby." (Id.) Such an argument does not impel withdrawing the reference.

The Bankruptcy Code does not define the term "personal injury tort claim," and "[t]here is almost no helpful legislative history. As a result, there is disagreement in the courts as to what constitutes a 'personal injury tort claim.'" In re Ice Cream Liquidation, Inc., 281 B.R. 154, 160 (Bankr. D. Conn. 2002) (discussing the history of § 157(b)(5) and summarizing relevant

8

authority).  Any injury Debtor alleges at the Trustee's hands is not "personal" to Debtor, but rather affects solely her property or the Estate.  This Court agrees that "Congress cannot have intended" in enacting § 157(b)(5) that "financial, business or property tort claims . . . could be withdrawn from the bankruptcy system."  Id.  As such, Debtor's labeling her entire Chapter 11 case a "personal injury tort" is unavailing, and § 157(b)(5) does not bar the Bankruptcy Court's continuing to oversee the action.

### The professional retention Orders

Debtor separately appeals from four Bankruptcy Court Orders authorizing the Trustee to retain various professionals to aid in administering the Estate.  Three of these appeals were filed in forma pauperis, and all four were filed pro se.  Where "an action or appeal" is filed in forma pauperis, a district court "shall dismiss the case" upon a finding that it is "frivolous or malicious."  28 U.S.C. § 1915(e)(2).  Likewise, "even when the fee has been paid," a district court has the authority to dismiss a pro se action "if it presents frivolous claims."  Taub v. Taub, 2010 WL 5563716, at *1 (S.D.N.Y. 2010) (citing Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 364 (2d Cir.2000)).  An action is frivolous where it "lacks an arguable basis in law" or its "factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy."  Livingston v. Adirondack Bev. Co., 141 F.3d 434, 437 (2d Cir.1998); see also Denton v. Hernandez, 504 U.S. 25, 33 (1992) (requiring allegations which "rise to the level of the irrational or the wholly incredible," rather than being merely "improbable or unlikely").

The Bankruptcy Code provides that a "trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons . . . to represent or assist the trustee in carrying out the trustee's duties under this title."  11 U.S.C.

9

§ 327(a). On August 13, 2010, the Bankruptcy Court authorized the Trustee's retention of David Maltz & Co. as the Estate's broker and management agent, and the retention of Gary Lampert, CPA, as accountant. On October 5, 2010, proceeding pro se and in forma pauperis, Debtor appealed each of these authorizations. See 10 CV 4529 (RJD), 10 CV 4530 (RJD), 10 CV 4531 (RJD). On August 25, 2010, the Bankruptcy Court authorized the Trustee's retention of Wenig Saltiel LLP as special counsel with respect to landlord/tenant matters. On November 2, 2010, proceeding pro se, Debtor appealed this authorization as well. See 10 CV 5063.

Since these appeals were docketed, the Bankruptcy Court has reaffirmed that "[t]he Trustee's retention of professionals has been appropriate and each of those retentions was approved after notice and a hearing." In re Taub, 441 B.R. at 216. Of course, this Court would consider a specific or well grounded objection to the appointment of some or all of these professionals. Debtor does not argue, for example, that the professional services contemplated are duplicative, that the professionals chosen are unsatisfactory or that any of the professionals holds "an interest adverse to the estate." 11 U.S.C. § 327(a). Rather, likening the Trustee to a "hungry vulture," Debtor alleges a conspiracy between the Trustee, the retained professionals and her husband "to greedily squander[] and loot[] the estate," by which "Debtor will become impoverished and left with nothing, while the Trustee and her ludicrous long list of professionals will apportion the proceeds for themselves." ("Rider" to 2/3/01 Ltr., Dkt. #5, at 2.) The same theme appears in "Debtor's Objection to Trustee's Unjustified Applications To Retain Excessive, High Priced Professionals Aimed at Strangling This Tiny Estate," filed on August 11, 2010, with the Bankruptcy Court, in which Debtor argues that the Trustee "immediately aligned herself with . . . the estate's enemy" and is eager "to carve out her portion of the estate as quickly as possible." (Bankr. Dkt. #676, at 2.) Debtor's only specific argument against these appointments

10

is that Debtor personally is capable of acting as manager, accountant and broker without demanding the same fees. The Trustee now manages the Estate, however, and it is firmly within the Trustee's discretion to select licensed professionals, rather than Debtor, to perform necessary services.

The Court has particular trouble with Debtor's continued objection to the Trustee's appointing special counsel to deal with landlord/tenant matters. As the Second Circuit has explained, "section 327(a) does not give a bankruptcy court authority to reject a trustee's choice of counsel solely because of an objection by the debtor. Rather, the debtor's objection is relevant only to a bankruptcy court's consideration of the best interest of the estate, or of whether the chosen special counsel is conflicted." In re Smith, 507 F.3d 64, 71 (2d Cir. 2007). While acknowledging that rental income "'is the lifeblood of the estate,'" (Mot. ¶ 28), Debtor aims to strip the Trustee of specialized counsel retained to facilitate collecting rents and resolving other landlord/tenant matters. The desired result could render the Estate helpless to enforce its interests, since "[t]he Trustee has exclusive standing to assert causes of action belonging to the estate." Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC, 443 B.R. 295, 311 (Bankr. S.D.N.Y. 2011) (internal quotation marks omitted). Hence, Debtor's challenge to the Trustee's retention of special counsel, construed as sympathetically as the record permits, is baseless.

The Court will not force the Trustee to expend the funds of this admittedly "tiny estate" defending these appeals, whose only apparent purpose is to delay the orderly procession of Debtor's bankruptcy case. As the Second Circuit has expressed, "freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." In re Gucci, 126 F.3d 380, 388 (2d Cir. 1997). That

11

concern here is especially acute. Accordingly, the Court dismisses Debtor's pro se appeals of the Bankruptcy Court's Orders authorizing the Trustee's retention of professionals.

**Debtor's abuse of the judicial process**

"[A] Chapter 11 petition is not filed in good faith unless it serves a valid reorganizational purpose." In re SGL Carbon Corp., 200 F.3d 154, 165 (3d Cir. 1999). Conversely, "the use of Chapter 11 petitions not to reorganize, but to relitigate . . . . is an impermissible use of Chapter 11." In re First Conn. Consulting Grp., Inc., 254 F. App'x 64, 68 (2d Cir. 2007) (internal quotation marks omitted); see also In re C-TC 9th Ave. P'ship, 113 F.3d 1304, 1309 (2d Cir. 1997) (affirming dismissal of Chapter 11 case whose "primary function [was] to serve as a litigation tactic" and whose "'primary characteristic [was the petitioner's] longstanding dispute with'" an opposing party).

After filing for Chapter 11 protection, which halted impending foreclosures on her properties, Debtor has proceeded as if being in bankruptcy were a mere formality. At the time of the Trustee's April 2010 appointment, hundreds of thousands of dollars in post-petition expenses had accrued during Debtor's Chapter 11 case. After defaulting on pre- and post-petition mortgage payments alike, Debtor steadfastly opposes the properties' liquidation.[9] Debtor objected vehemently to the Trustee's appointment and, losing that battle, has repeatedly harassed the Trustee (and diverted resources better spent elsewhere) by moving for the Trustee's termination and sanctioning. Her speculative "plan" of reorganization hinges on the outcome of an equitable distribution action, but she has argued against allowing the action to proceed in state court. On the morning the action was set to commence, Debtor forced her husband into involuntary bankruptcy, with her alleged status as a petitioning creditor dependent upon a

---

[9] At least one secured creditor has since moved for relief from the automatic stay to initiate foreclosure proceedings.

12

favorable outcome of the very equitable distribution action halted in place by the involuntary petition. Debtor has twice alleged that the Bankruptcy Court and the District Court are part of an ongoing RICO enterprise conducted by her husband. She has sought recusal of four State Court Justices presiding over her matrimonial action and sued one of those Justices for alleged civil rights violations. Since the inception of her bankruptcy case, Debtor has retained, in serial fashion, nine separate attorneys. Now she fights the Trustee's appointment of professionals to administer the Estate and brings a motion to withdraw the reference that may charitably be described as frivolous.

      Debtor's campaign of litigation and delay directly contravenes "[t]he Bankruptcy Code's goals of finality and closure." In re Pawlowski, 428 B.R. 545, 551 (E.D.N.Y. 2009). In finding the Bankruptcy Court's authorization of a Chapter 11 trustee justified under 11 U.S.C. § 1104(a)(2), Judge Amon did not reach the question of whether the appointment was justified under § 1104(a)(3), now § 1112(b)(1), which allows the appointment of a trustee as an alternative to converting or dismissing a Chapter 11 case for cause.[10] Since then, both the Chapter 11 Trustee (Ms. Lapin Jones) and the United States Trustee have all but thrown in the towel on this Chapter 11 reorganization. Although this Court defers initially to the Bankruptcy Court's wisdom in this regard, the Court warns Debtor that <u>any</u> further vexatious conduct related

---

[10] The term "cause" is defined by statute to include "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," or the "failure timely to pay taxes owed after the date of the order for relief." 11 U.S.C. § 1112(b)(4).

to this action, including filing motions or appeals without factual or legal support, will result in the immediate dismissal of her bankruptcy case for a demonstrated lack of good faith.

SO ORDERED.

Dated: Brooklyn, New York
      March 31, 2011                                   s/ Judge Raymond J. Dearie
                                                                RAYMOND J. DEARIE
                                                                United States District Judge